IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

LISA F.,

        Plaintiff,

v.                                     Civil Action 2:23-cv-2981
                                       Judge Michael H. Watson
                                       Magistrate Judge Kimberly A. Jolson

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

**REPORT AND RECOMMENDATION**

        Plaintiff, Lisa F., brings this action under 42 U.S.C. § 405(g) seeking review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI"). For the following reasons, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

**I.    BACKGROUND**

        Plaintiff previously applied for both Disability Insurance Benefits and SSI on July 5, 2011. Her application proceeded to an administrative hearing, and Administrative Law Judge David Bruce ("ALJ Bruce") issued an unfavorable decision on November 12, 2014. (R. at 83–103).

        In March 2020, Plaintiff protectively filed her current application for SSI, alleging that she was disabled beginning January 1, 2009[1], due to depression, schizophrenia, anxiety, diabetes, arthritis, bad left knee, mild scoliosis, ankylosing. (R. at 283–88, 308). After her application was denied initially and on reconsideration, Administrative Law Judge M. Drew Crislip ("ALJ Crislip") held a telephone hearing on December 8, 2021, which was continued to allow Plaintiff to obtain

---

[1] At the August 18, 2022, hearing, Plaintiff amended her alleged disability onset date to February 8, 2020. (R. at 39).

counsel. (R. at 66–83). After Plaintiff hired counsel, a second hearing was held. (R. at 36–65). Ultimately, ALJ Crislip denied benefits in a written decision. (R. at 14–35). When the Appeals Council denied review, that denial became the Commissioner's final decision. (R. at 1–6).

Plaintiff filed the instant case seeking a review of the Commissioner's decision on September 15, 2023 (Doc. 1), and the Commissioner filed the administrative record on November 9, 2023 (Doc. 6). The matter has been briefed and is ripe for consideration. (Docs. 7, 9, 10).

### A. Relevant Hearing Testimony

ALJ Crislip summarized Plaintiff's hearing testimony as follows:

> [Plaintiff] testified she is always depressed and nothing has helped. She stated most of the time she is not able to function, declaring there are times she is unable to get out of the bed or leave the house. She indicated she takes 10 pharmaceuticals each day, explaining that in the last two years medication adjustments have been deemed necessary; she opined that one preparation had caused severe agitation and panic attacks. She indicated she has difficulty with concentration and written instructions and has periods of manic depression and inability to sleep. Regarding activities of daily living, [Plaintiff] conceded that she performs basic personal hygiene independently, although she does not bathe daily. She asserted that she does not have good days.

(R. at 23).

### B. Relevant Medical Evidence

ALJ Crislip summarized Plaintiff's medical records as to her relevant physical and mental impairments, which the Undersigned discusses in detail below. (R. at 23–25). ALJ Crislip then summarized and evaluated the medical source opinions, which the Undersigned also discusses in detail below. (R. at 26–28).

### C. ALJ Crislip's Decision

ALJ Crislip found that Plaintiff has not engaged in substantial gainful employment since February 8, 2020, the protective application date and amended alleged disability-onset date. (R. at 19). ALJ Crislip also determined that Plaintiff suffered from the following severe impairments:

lumbar degenerative disc disease, ankylosing spondylitis, osteoarthritis of the left knee, anxiety disorder, and depressive disorder with intermittent symptoms of schizoaffective disorder. (*Id.*). ALJ Crislip, however, found that none of Plaintiff's impairments, either singly or in combination, meet or medically equal a listed impairment. (R. at 20–23).

ALJ Crislip assessed Plaintiff's residual functional capacity ("RFC") as follows:

After careful consideration of the entire record, the [ALJ] find[s] that [Plaintiff] has the residual functional capacity to lift, push, pull, and carry 20 pounds occasionally and 10 pounds frequently and to sit six hours and stand and/or walk six hours in an eight-hour workday. [Plaintiff] must alternate from sitting to standing or walking for 2-3 minutes every hour and from standing or walking to sitting for 2-3 minutes each half-hour, always with capacity to remain on task during position changes, some of which would be covered by typical work breaks or time off task there beyond. She can occasionally climb ramps and stairs, balance (navigate uneven or slippery terrain) and stoop, but never kneel, crouch, crawl, or climb ladders, ropes, or scaffolds. [Plaintiff] can never work at unprotected heights, in proximity to moving mechanical parts of dangerous machinery, or in the operation of a motor vehicle. She can occasionally work in weather, humidity, wetness, pulmonary irritants, but never in extreme cold, extreme heat, vibration, noise above moderate, or any flashing, glaring, or strobing lights although typical office fluorescent lights are endurable without restriction. [Plaintiff] cannot perform complex tasks or high production rate or fast paced work. She can tolerate occasional interaction with supervisors, coworkers, and the public but no teamwork or customer service work; however, regarding supervisors, for orientation periods up to 30 days contact level could be frequent. [Plaintiff] is able to tolerate only a few changes in a routine work setting defined as follows: she should not be expected to adapt to the performance of new and unfamiliar duties as primary work tasks without orientation (i.e., she is not a self-starter). In addition to normal breaks, she would be off task 5 percent of time in an eight-hour workday.

(R. at 22–23).

Upon "careful consideration of the evidence," ALJ Crislip found that Plaintiff's "statements concerning the intensity, persistence and limiting effects thereof are not entirely congruent with the medical and other evidence before me for the reasons explained in this decision." (R. at 23).

ALJ Crislip determined that Plaintiff is unable to perform any past relevant work. (R. at 28–29). ALJ Crislip relied on testimony from a vocational expert ("VE") to determine that given

3

Plaintiff's age, education, work experience, and RFC, she could perform light exertional, unskilled jobs that exist in significant numbers in the national economy, such as an agricultural produce sorter, folding machine operator, and mail sorter. (R. at 28–30). Consequently, ALJ Crislip concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, since February 8, 2020, the date the application was filed and the amended alleged onset date[.]" (R. at 30).

## II. STANDARD OF REVIEW

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To this end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 2:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015). But "[i]f the ALJ commits an error of law, the court must reverse and remand, 'even if the factual determinations are otherwise supported by substantial evidence and the outcome on remand is unlikely to be different.'" *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011) (quoting *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 859 (6th Cir. 2011)).

### III. DISCUSSION

In her Statement of Errors, Plaintiff contends that ALJ Crislip used the wrong legal standard and relied upon flawed opinion evidence, creating an additional and unwarranted procedural burden for her to overcome. (Doc. 7 at 5–14). More specifically, Plaintiff argues that ALJ Crislip premised his decision on the mistaken understanding that he "must adopt" ALJ Bruce's prior findings absent new and material evidence. (*Id.* at 7). Plaintiff further argues that this error tainted the entire decision, and the fact that he provided a review of the newly submitted evidence and imposed a slightly different RFC is "immaterial to the error of law." (*Id.* at 13). The Commissioner counters that ALJ Crislip evaluated Plaintiff's current claim, including the relevant record evidence for the period at issue, precisely with the "fresh look" envisioned by the Sixth Circuit. (Doc. 9 at 3–8).

#### A. *Drummond*, *Earley*, and Fresh Review

In *Drummond v. Commissioner of Social Security*, the Sixth Circuit held that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." 126 F.3d 837, 842 (6th Cir. 1997). In that case, a claimant's initial claim for SSI was denied when an ALJ found that she was capable of sedentary work. *Id*. at 838. When the claimant later re-filed her disability claim, a second ALJ found that she was capable of medium-level work—unlike the sedentary RFC finding of the first ALJ—and denied the re-filed claim. *Id*. at 839. After explaining that "*[r]es judicata* applies in an administrative law context following a trial type hearing," the Sixth Circuit held that the second ALJ was bound by the sedentary RFC determination of the first ALJ because there was no new or additional evidence of an improvement in the claimant's condition. *Id*. at 841–842. The Sixth Circuit reasoned that "[j]ust as a social security claimant is barred from relitigating an issue that has been previously determined, so is the Commissioner." *Id*. The Social Security

5

Administration subsequently issued an Acquiescence Ruling explaining how the ruling in *Drummond* would be applied to claims in the Sixth Circuit:

> When adjudicating a subsequent disability claim with an adjudicated period under the same title of the Act as the prior claim, adjudicators must adopt such a finding from the final decision by an ALJ or the Appeals Council on the prior claim . . . unless there is new and material evidence relating to such a finding or there has been a change in the law, regulations or ruling affecting the finding or the method for arriving at the finding.

AR 98-4(6), *Effect of Prior Findings on Adjudication of a Subsequent Disability Claim Arising Under the Same Title of the Social Security Act -- Titles II and XVI of the Social Security Act*, 1998 WL 283902, at *3 (June 1, 1998).

The Sixth Circuit further addressed the scope of *Drummond* in *Earley v. Commissioner of Social Security* by reiterating that *res judicata* applies to administrative proceedings. 893 F.3d 929 (6th Cir. June 27, 2018). The *Earley* Court explained that when a claimant files a later application covering the same period as an earlier application, *res judicata* applies absent good cause to revisit the earlier determination. *Id*. at 933. But the *Earley* Court explained that *res judicata* does not apply when a claimant files a subsequent application seeking benefits for a different period. Instead, "[w]hen an individual seeks disability benefits or a distinct period of time, each application is entitled to review." *Id*. The *Earley* Court cautioned, however, that "fresh review is not blind review." *Id*. at 934. Although an ALJ evaluating a subsequent application is not bound to follow a previous determination, the ALJ may "nevertheless consider what an earlier judge did if for no other reason than to strive for consistent decision making." *Id.*

Since then, this Court has said that *Earley* "clarified" the Court's decision. *Teasley v. Comm'r of Soc. Sec.*, No. 2:18-cv-1079, 2019 WL 2559514 at *5 (S.D. Ohio June 21, 2019). "The Sixth Circuit explained that 'the key principles protected by *Drummond*—consistency between proceedings and finality with respect to resolved applications'—do not prohibit the Social Security

6

Administration 'from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in a prior proceeding.'" *Id.* (citing *Earley*, 893 F.3d at 933). Therefore, as this Court has noted, "it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are a legitimate, albeit not binding, consideration in reviewing a second application." *Id.* In fact, in *Dugan v. Commissioner of Social Security*, an early post-*Earley* decision, the Sixth Circuit cited to *Drummond* and noted that "[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to benefits, the Commissioner is bound by this determination absent changed circumstances." 742 F. App'x 897, 901–02 (6th Cir. 2018). The Court explained that "[i]n such cases, '[a]bsent evidence of an improvement in a claimant's condition, a subsequent ALJ is bound by the findings of a previous ALJ.'" *Id.* The Court found that the ALJ's pre-*Earley* analysis satisfied the legal standard because she ultimately found new and material evidence of medical improvement, which meant she was not bound by a prior ALJ's determination. *Id.* Said simply, citation to *Drummond* was not in and of itself enough to warrant remand. This Court, as well as other courts in the circuit, have come to the same conclusion.

In *Parsons v. Commissioner of Social Security*, for instance, the Court noted that the ALJ "failed to mention *Earley* even though it is applicable here. Nevertheless, [the ALJ] followed the precepts in *Early* [sic] by finding that new evidence undermined ALJ Bruce's RFC assessment." No. 2:20-cv-2594, 2021 WL 1015910, at *7 (S.D. Ohio Mar. 17, 2021). The same was true in *Mitchell v. Commissioner of Social Security*, where the United States District Court for the Eastern District of Michigan explained that "the Court is less concerned as to whether the ALJ merely stated the wrong legal standard, and more concerned as to whether the ALJ applied the wrong legal

7

standard." No. 20-13414, 2022 WL 265869, at *2 n.3 (E.D. Mich. Jan. 28, 2022).  And "while a post-*Earley* ALJ's recitation of the pre-*Earley* standard raises a yellow flag, it is nevertheless possible that such a post-*Earley* ALJ decision could functionally comply with *Earley* if the ALJ gave the evidence a fresh look." *Id.*; *see also Civitarese v. Comm'r of Soc. Sec.*, No. 1:19-cv-2015, 2020 WL 4366077, at *14 (N.D. Ohio July 30, 2020).

So, while citation to *Drummond* without *Earley* raises a yellow flag, the ultimate question is whether the ALJ freshly reviewed the evidence.

**B. ALJ Crislip's Review**

In discussing his consideration of *Drummond*, ALJ Crislip determined:

> In the case of *Drummond v. Commissioner of Social Security*, 126 F.3d 837 (6th Cir. 1997), the court held that absent evidence of an improvement in a claimant's condition, a subsequent Administrative Law Judge is bound by the findings of a previous Administrative Law Judge (see also *Dennard v. Secretary of Health and Human Services*, 907 F.2d 598 (6th Cir. 1990)(holding prior findings concerning work experience, past relevant work requirements, education level, and age to be given preclusive effect)). In accordance with Acquiescence Ruling 98-4(6), adjudicators must adopt a finding required at a step in the sequential evaluation process and made by an Administrative Law Judge or the Appeals Council in a final decision on a prior claim, unless there is new and material evidence relating to such a finding or there has been a change in the law. I do not adopt the prior decision due to the decision being too remote in time (November 2014) and new and material evidence in connection with the current claim supports the above residual functional capacity.

(R. at 28).

Plaintiff is correct that ALJ Crislip cited to the legal standard in *Drummond* and Acquiescence Ruling 98-4(6), rather than *Drummond* as clarified by *Earley*.  (Doc. 7 at 7).  Instead of noting that ALJ Bruce's prior findings were a legitimate, albeit not binding, consideration, ALJ Crislip stated that he "must adopt" the prior findings absent new and material evidence.  (R. at 28).  Plaintiff contends that by using the wrong legal standard, ALJ Crislip created an unwarranted procedural burden that she needed to overcome, requiring remand.  (Doc. 7 at 14).

8

Yet, as explained above, an ALJ's erroneous citation to *Drummond* without reference to *Earley* does not, on its own, warrant reversal. *See Christina S. v. Comm'r of Soc. Sec.*, No. 3:22-CV-298, 2023 WL 4557045, at *8 (S.D. Ohio July 17, 2023). While citing the wrong legal standard may raise a "yellow flag," the ultimate question before the Court is "whether the [adjudicator] gave a fresh review to the evidence" in a claimant's case. *Mark D. v. Comm'r of Soc. Sec.*, No. 3:22-CV-58, 2023 WL 312795, at *5 (S.D. Ohio Jan. 19, 2023) (citing *Mitchell*, 2022 WL 165869, at *2 n.3), *report and recommendation adopted*, No. 3:22-CV-58, 2023 WL 2479792 (S.D. Ohio Mar. 10, 2023). In other cases, discussing new medical records provided evidence that the ALJ freshly reviewed a claimant's case. *Brandon M. v. Comm'r of Soc Sec.*, No. 3:22-CV-167, 2023 WL 6348406, at *3 (S.D. Ohio Sept. 29, 2023). Adding severe impairments that were not included in a claimant's prior disability determination was also "a strong indicator that the current ALJ conducted a fresh look at the evidence." *Id.* (citing *Sadler v. Comm'r of Soc. Sec.*, No. 18-11689, 2019 WL 4892419, at *6 (E.D. Mich. Aug. 16, 2019)).

Here, although ALJ Crislip failed to cite to *Earley*, these factors are present, and ALJ Crislip even acknowledged at Plaintiff's disability hearing that "those [prior] decisions do not bind me in any way. We start all over." (R. at 38). ALJ Crislip's reasoning shows that he reviewed the new evidence to give Plaintiff's application the required "fresh review." *Earley*, 893 F.3d at 933.

Based on the record, ALJ Crislip first found that Plaintiff had several severe impairments that ALJ Bruce previously did not find, including ankylosing spondylitis, osteoarthritis of the left knee, anxiety disorder, and depressive disorder with intermittent symptoms of schizoaffective disorder. (*Compare* R. at 19 *with* R. at 89). ALJ Crislip also did not find that Plaintiff had other severe impairments that ALJ Bruce did, including degenerative joint disease of the left knee status post meniscus repair, bipolar disorder, and major depressive disorder. (*Id.*). Notably, ALJ Crislip

9

did not refer to ALJ Bruce's finding of severe impairments in coming to his own conclusion. (R. at 19–20).

ALJ Crislip then found Plaintiff's RFC included restrictions significantly different than the restrictions adopted by ALJ Bruce. (*Compare* R. at 22–23 *with* R. at 92). In fact, the only similarities in the RFCs were ALJ Crislip's findings that Plaintiff can never work in extreme heat, cannot perform complex tasks, and can tolerate occasional interaction with supervisors, coworkers, and the public. (*Id.*). Notably, ALJ Crislip's RFC finding included more than fifteen restrictions not previously adopted. (*Id.*); *see Sadler*, 2019 WL 4892419, at *6. And the only reference to ALJ Bruce's RFC finding was ALJ Crislip's comment that he did "not adopt the prior decision due to the decision being too remote in time (November 2014) and new and material evidence in connection with the current claims supports the above residual functional capacity." (R. at 28).

In coming to his ultimate RFC finding, ALJ Crislip evaluated medical evidence that did not exist at the time of Plaintiff's previous disability determination, as well as Plaintiff's testimony from her August 2022 hearing. ALJ Crislip considered Plaintiff's testimony that she was depressed to the point of being unable to function and took ten medications daily. (R. at 23, citing R. at 53–55). ALJ Crislip also noted that Plaintiff testified to having difficulty concentrating, following written instructions, sleeping, and finding the energy to bathe, although she was able to perform basic personal hygiene independently. (*Id.*, citing R. at 56–59). ALJ Crislip considered Plaintiff's reports of her daily activities such as "performing self-care, reading, gardening, and spending time with family." (R. at 25, citing *e.g.*, R. at 409, 587, 600, 608, 640, 643).

ALJ Crislip then analyzed physical and objective examination findings related to Plaintiff's physical impairments since her alleged onset date. ALJ Crislip considered Plaintiff's ankylosing spondylitis, knee pain, and back pain. (R. at 23–24). Medical records showed that the pain was

10

not consistently reported during the relevant period, and Plaintiff was advised to take Tylenol and Motrin as needed on multiple occasions. (*Id.*, citing *e.g.*, R. at 430, 449, 509, 606, 626, 630, 637). The ALJ noted that Plaintiff was also once prescribed Cyclobenzaprine for her back spasms, and her provider ordered imaging of her knee on two occasions but there was no indication x-rays were ever performed. (*Id.*, citing R. at 461, 509, 606). ALJ Crislip highlighted that imaging of the sacroiliac joint in February 2021 showed "ankylosing spondylitis but well-maintained sacroiliac joints without evidence of sclerosis or erosions." (R. at 24, citing R. at 514). He also considered a January 2022 consultative examination where Plaintiff did not have tenderness of the lumbar spine and her muscle strength, sensation, reflexes, and range of motion were within normal limits. (*Id.*, citing R. at 562–566).

      Still more, ALJ Crislip considered examinations concerning Plaintiff's mental health. ALJ Crislip highlighted that throughout 2020 Plaintiff had periods where her anxiety and schizoaffective disorder were controlled with therapy and medication but at other times, she experienced a depressed and anxious mood and auditory hallucinations. (*Id.*, citing *e.g.*, R. at 404–05, 409–10, 420–22, 444–46). Throughout this time, ALJ Crislip noted, Plaintiff's medications were adjusted by her provider, and Plaintiff "consistently scored zero on depression screenings (PHQ)." (*Id.*, citing *e.g.*, R. at 404–05, 409–10, 420–22, 444–46). ALJ Crislip considered that throughout 2021, Plaintiff experienced depression, anxiety, and irritability, but her attention improved, her mental status exams were generally normal, and she functioned better while on medication. (R. at 25, citing *e.g.*, R. at 528, 534, 611–12, 614–613, 617, 620, 632–33, 643, 646). While Plaintiff reported some auditory hallucinations, ALJ Crislip noted that she still consistently scored zero on depression screenings. (*Id.*, citing R. at 502, 528, 542–543, 611). Then, ALJ Crislip highlighted that in 2022, Plaintiff had more normal mental status exams and was able to be more active, but still had "waxing

11

and waning of symptoms and medication adjustment." (*Id.* citing, *e.g.*, R. at 587, 590, 594, 597, 600, 608). ALJ Crislip also considered an evaluation in July 2022 where Plaintiff's mood was "completely off" after she stopped taking one of her medications—but after her provider adjusted her medication, she subsequently denied feeling depressed. (*Id.* citing R. at 757–578, 760).

After considering this medical evidence, ALJ Crislip finally considered medical opinions and prior administrative medical findings. ALJ Crislip first summarized impartial medical expert Dr. David Owens's testimony from Plaintiff's disability hearing about her history of knee pain, back pain, diabetes, and obesity. (R. at 26; *see* R. at 42–43). He ultimately found Dr. Owens's opined postural and environmental restrictions "generally persuasive," but added to or enhanced the restrictions "based on [his] independent review of the entire record." (*Id.*). ALJ Crislip then summarized impartial medical expert Dr. Mary Buban's testimony from the disability hearing about Plaintiff's anxiety and schizoaffective disorder. (R. at 26–27; *see* R. at 44–47). He found Dr. Buban's opinion generally persuasive but, again, added to or enhanced the restrictions based upon his review of the record. (*Id.*). Lastly, ALJ Crislip summarized a mental impairment questionnaire completed by certified physician assistant LeeAnn Reed. (R. at 27–28; *see* R. at 780–83). ALJ Crislip found this opinion not persuasive because Reed identified that Plaintiff had a marked or extreme dysfunctionality in 21 out of the 24 mental impairment categories which "would require round-the-clock individual care." (R. at 27–28, citing R. at 781–82). ALJ Crislip went on to say that "[w]hile the record adequately supports severe mental health medically determinable impairment with significant limitations, this opinion statement is not congruent with the longitudinal record," including with treatment notes made by Reed throughout the record. (R. at 28).

In an effort to undermine ALJ Crislip's analysis, Plaintiff relies on cases where courts have found that an ALJ appeared to be bound or otherwise hamstrung by prior decisions in contravention of *Earley*. *See, e.g.*, *Nadia A.T. v. Comm'r of Soc. Sec.*, No. 3:22-cv-12, 2023 WL 2401723, at *4 (S.D. Ohio Mar. 8, 2023) (finding that where an ALJ treats a prior RFC determination "as a mandatory starting place for his own RFC determination[,]" *Earley* is violated); *Robert K. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-CV-00091, 2023 WL 5662785, at *6 (S.D. Ohio Sept. 1, 2023) ("[T]his Court holds that although ALJs may (and should) consider a prior ALJ decision, they may not use that prior decision as a starting point for their analysis or otherwise presume that it will dictate the outcome of the pending application."). And Plaintiff offers cases where this was true even when an ALJ imposed a different RFC than the prior ALJ. *See, e.g.*, *Dunn v. Comm'r of Soc. Sec.*, No. 1:17-CV-634, 2018 WL 4574831, at *3 (W.D. Mich. Sept. 25, 2018) (remanding where an ALJ did not "satisf[y] the analytical framework set forth in *Earley*" when he explained "he was required to adopt ALJ Moscow Michaelson's RFC findings and then had to explain why he was not bound by them" in determining a different RFC); *Brecheisen v. Comm'r of Soc. Sec.*, No. 1:20-CV-750, 2021 WL 6278477, at *5 (W.D. Mich. Dec. 21, 2021) ("Simply put, ALJ Tjapkes did not take a fresh look at Plaintiff's condition and articulate his own RFC for Plaintiff. Instead, ALJ Tjapkes considered ALJ MacDonald's RFC a mandatory starting point and simply added one additional limitation thereto."), *report and recommendation adopted*, No. 1:20-CV-750, 2022 WL 43700 (W.D. Mich. Jan. 5, 2022).

But each decision must be evaluated on its own merit. In this case, the fairest read of ALJ Crislip's opinion is that he reviewed the evidence independently—without any thumb on the scale—and crafted a record-based RFC. That is all that is required, even if ALJ Crislip cited *Drummond* without *Earley*. *See Tammy T. v. Comm'r of Soc. Sec.*, No. 1:22-cv-248, 2023 WL

3432299, at *6 (S.D. Ohio May 13, 2023) (finding that though the ALJ did not mention *Earley* and adopted the former ALJ's mental RFC, the new ALJ had provided the "fresh look to which plaintiff was entitled[ ]" by thoroughly reviewing the evidence of record, including records post-dating the prior ALJ's determination); *Dennis D. v. Comm'r of Soc. Sec.*, No. 3:22-CV-202, 2023 WL 2943822, at *8 (S.D. Ohio Apr. 14, 2023) ("Because ALJ Beatty reached a different conclusion than ALJ Kenyon's prior decision, and because ALJ Beatty based his conclusion on medical and psychological information and records obtained after ALJ Kenyon's 2018 decision, it is apparent that ALJ Beatty provided the fresh look to which plaintiff was entitled."), *report and recommendation adopted sub nom. Dennis D. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-CV-00202, 2023 WL 3979215 (S.D. Ohio June 13, 2023); *Brent v. Comm'r of Soc. Sec.*, 2018 U.S. Dist. LEXIS 159118, 2018 WL 5118598 (E.D. Mich. Aug. 21, 2018) (analyzing whether the ALJ took seriously his duty to review the evidence anew and recommending affirmance despite the ALJ's use of the *Drummond* framework), *report and recommendation adopted by* 2018 U.S. Dist. LEXIS 157841, 2018 WL 4403418 (E.D. Mich. Sept. 17, 2018).

Accordingly, the Undersigned finds that ALJ Crislip freshly reviewed Plaintiff's application. He analyzed, in detail, Plaintiff's new medical records; found appropriate additional severe impairments; and determined additional restrictions in Plaintiff's RFC were warranted. All told, substantial evidence supports his decision.

IV. **CONCLUSION**

Based on the foregoing, it is **RECOMMENDED** that the Court **AFFIRM** the Commissioner's decision.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed finding or recommendations to which objection is made, together with supporting authority for the objection(s). A District Judge of this Court shall make a *de novo* determination of those portions of the Report or specific proposed findings or recommendations to which objection is made. Upon proper objection, a District Judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the Magistrate Judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

IT IS SO ORDERED.


Date: February 22, 2024                             /s/ Kimberly A. Jolson
                                                    KIMBERLY A. JOLSON
                                                    UNITED STATES MAGISTRATE JUDGE